L. R. & F. S. Ry. v. R. W. Worthen, Collector, etc., et al.

THE LITTLE ROCK & FORT SMITH RY. v. R. W. WORTHEN, COLLECTOR, ETC., ET AL.

1. STATUTES: *Unconstitutional, to be disregarded by executive officers.*
   Officers of the executive department are not bound to execute a statute which, in their judgment, is unconstitutional. Their primary allegiance is due to the constitution, and if there be a conflict between the two the constitution, and not the statute is the law.

2. SAME: *Unconstitutionality of. Decision by executive officers.*
   Executive officers incur peril by deciding for themselves, in advance of the courts, the unconstitutionality of a statute; but they are also liable to damages if they execute a statute which violates the constitution.

3. TAXES: *Legislature, no power to discriminate.*
   The legislature cannot discriminate between different classes of property in the imposition of taxes. Its only discretion is in the ascertainment of values so as to make them equal and uniform throughout the state.

4. STATUTE: *Unconstitutional in part.*
   When a statute is divisible and only a part of it is repugnant to the constitution, that part is rejected and the balance upheld.

5. TAXES: *On railroads. Construction of statute.*
   So much of section 5649, Mansfield's Digest, as excludes "embankments, tunnels, cuts, ties, trestles or bridges" from assessment by the state board of railroad commissioners, is unconstitutional, and the board should disregard it and include them in the assessment.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W CARROLL, Chancellor.

*J. M. Moore,* for appellant.

*Section 5 of article 16 of the constitution* provides that all property subject to taxation shall be taxed according to its value, *that value to be ascertained in such manner as the gen-*

*eral assembly shall direct,* making the same equal and uniform throughout the state.

The first question that arises in this case relates to the powers of the legislature under the constitution. · It is contended for the appellees that that provision of section 46 of the revenue act, which excludes embankments, etc., from the schedule of property required to be returned by railroad companies for assessment, must be treated as an attempt to exempt property from taxation, and is obnoxious to the provision, *section 6 of article 16 of the constitution,* prohibiting the exemption of property from taxation by the legislature.

It is a familiar rule that where there is a reasonable doubt as to the repugnance of an act of the legislature with a provision of the constitution, the courts will sustain the act; and when the question is raised the courts seek to place such a construction on a legislative enactment as will enable it to stand. *Cooley on Const. Lim., 182–5.*

Our constitution does not contain any restriction upon legislative discretion as to the manner of assessing property for taxation; on the contrary, the provision above quoted, in express terms, leaves the manner in which the value of property is to be ascertained wholly to the legislative discretion. The succeeding provision as to quality and uniformity only applies to property of the same species, and not to different classes of property, inherently different in its nature and requiring different methods of assessment. *Cooley on Taxation, 128–9, and note 1 to p. 129.*

What we contend for in this case is that the provision for excluding embankments, tunnels, etc., was not designed by the legislature as an exemption of property from taxation. That body was endeavoring to adopt some manner of assessment that would be suitable to this class of property with which it was dealing, and would operate equally and

uniformly on all property of that kind. As was said by the court in the *Kentucky Tax Case, 115 U. S., 721,* "The right to classify railroad property, as a separate class, for purposes of taxation, grows out of the inherent nature of the property." The court might have gone further and substituted the word *necessity* for the word right; for the necessity for a separate and distinct classification of railroad property is apparent. We think this case is strongly in point in support of the constitutionality of the provision under discussion, and ask a careful consideration of it.

*Second*—There is no controversy as to the proposition that before property can be subjected to taxation there must be an assessment under a law passed by the legislature, and by an officer or tribunal clothed by law with the power to make the assessment. And where the statute does not by fair interpretation confer the power, the courts cannot, by adding to or subtracting from its language or provisions, create such a power. We think that by no known rule of construction can the revenue law be held to clothe the board of railroad commissioners with the power to assess those items excluded from the schedule required to be returned by the provisions of section 46.

Section 44 provides that the board shall assess railroad property in the manner "*hereinafter* provided."

Section 45 provides that sworn lists of schedules shall be returned of the taxable property of railroads as "*hereinafter* provided." That such property—that is, the property required to be returned in the schedules—shall be listed and assessed, etc.

Section 46 prescribes what shall be included in the schedules provided for in the preceding section, and excludes embankments, tunnels, cuts, ties, trestles and bridges, providing that they shall neither be returned or valued.

Section 49 provides that the board shall meet at the office of the secretary of state at a time designated in each year, and, after being sworn, shall proceed—to do what? Not to value and assess railroads or the property of railroad companies. The language is very different from that; it is, "they shall proceed to examine the lists or schedules of the description and value of the *railroad track* of the railroad companies filed with the secretary of state, in accordance with the requirements of this act." The meaning of the words *railroad track* is plain enough as they stand in this section, but if anything more is needed to show that only the portions of the track required to be embraced in the schedules were intended, it will be found in section 47, where the term is defined to mean such parts of the track as are required to be described and scheduled in the preceding section.

We submit then, 1st, that section 44 does not confer a general power on the board to assess railroad property, but that their powers are expressly limited and qualified, and to be exercised only in the manner thereinafter prescribed; 2d, that the duties and powers of the board in the matter of the assessment of the railroad track are prescribed in section 49, and by the express terms of that section they were only empowered to assess the property embraced in the schedule provided for in section 46 ; 3d, that the sense in which the term *railroad track* is used in the act is defined in section 47, and it was designed to, and should, control and limit the meaning of the term throughout the act.

The meaning of the act is too plain to require a resort to the rules of construction. The language used is plain and simple and free from ambiguity, and confers on the board of commissioners only a limited authority ; and this language is in harmony with the obvious intent of the act,

which was not to confer on the board the power to assess those items which are excluded in section 46.

*Dan W. Jones*, Attorney General, for appellees.

No question is presented as to the power of the legislature to provide for the manner of ascertaining the value of this species of property; but it is conceded that full power is granted by the constitution for the establishment of the board of railroad commissioners, as was done by the revenue act of March 31, 1883. And it was, manifestly, the intention of the legislature that this board should have the sole power of assessing all railroad property in this state which is situated on the right of way.

That part of said revenue act relating to the valuation of railroad property is contained in the *Rev. Stat. of 1884, secs. 5647 to 5659*, both inclusive.

The contention on the part of the appellant is:

*First*—That the board of railroad commissioners has no power to construe the constitutionality of any part of the foregoing act, but must take it and act under it as it reads, without regard to the question of any part of it being in violation of the constitution.

*Second*—That it is in the power of the legislature, in providing for the manner of valuing railroad property, to determine what elements shall be taken into consideration as constituting such value; and that it was competent for that body to exclude the " embankments, tunnels cuts, ties, trestles and bridges " from the schedules to be filed, as not constituting elements of value; and that, therefore, such exclusion in section 5649, *supra*, is constitutional.

*Third*—That the board of railroad commissioners is created by the statute, and its powers are prescribed and limited by the statute, and that, consequently, it exceeded

its powers in considering the value of "embankments, tunnels, cuts, ties, trestles and bridges," when valuing the "railroad track" of appellant; that there is no manner provided by law for assessing "embankments, tunnels, cuts, ties, trestles and bridges," and, consequently, the same cannot be taxed.

Before examining these questions, *seriatim*, it may be conceded that the legislature may fail, *refuse* or neglect to provide a system, or manner, for ascertaining the value of any particular *species* of property, and that for such failure, refusal or neglect there is no remedy, except the ballot-box. But, when a system, or manner, is provided for ascertaining the value of *any* species of property, such system, or manner, must be in strict accordance with the constitution.

Then, to consider the grounds of appellant's contention in this action :

*First*—Did the board of railroad commissioners have the power to construe the constitutionality of any part of the revenue act affecting said board? or was it the duty of said board to take said act and act under it as it reads, without regard to the question of any part of it being in violation of the constitution ?

It will be observed that said board is composed of three of the chief executive officers of the state—the governor, secretary of state, and auditor of public accounts—who, as such, were already under the solemnity of an oath of office which requires them to support the constitution of the United States and the constitution of the state of Arkansas, and to faithfully discharge their duties of office. *Const. of Ark., art. 19, sec. 20.*

In addition to this, they are required to take an additional oath, as members of such board of commissioners,

to " fearlessly, impartially and honestly, discharge their duties." *Sec. 5652 Rev. Stat., supra.*

Judge Cooley, in his work on Constitutional Limitations, at page seventy-four, says : " Whoever derives power from the constitution to perform any public function is disloyal to that instrument, and grossly derelict in duty, if he does that which he is not reasonably satisfied the constitution permits. Whether the power be legislative, executive, or judicial, there is manifest disregard of constitutional and moral obligation by one who, having taken an oath to observe that instrument, takes part in an action which he cannot say he believes to be no violation of its provisions. A doubt of the constitutionality of any proposed legislative enactment should in any case be reason sufficient for refusing to adopt it ; and if legislators do not act upon this principle, the reasons upon which are based the judicial decisions sustaining legislation in very many cases will cease to be of force."

In fact, no principle is better established in the law than that such part of every act of a legislature as is in violation of the constitution is absolutely void, and that every officer of the law obeys or enforces it at his peril. *Rison et al. v. Farr*, *24 Ark.*, *161; Eason v. State, 11 Ark., 481; Marbury v. Madison, 1 Cranch, 176, et seq. ; Vanhorne's Lessee v. Dorrance, 2 Dallas, 307, et seq.*

*Second*—Is it true, as appellant contends, that it is in the power of the legislature, in providing for the manner of valuing railroad property, to determine what elements shall be taken into consideration as constituting such value ; and that it was competent for that body to exclude " embankments, tunnels, cuts, ties, trestles and bridges," from the schedules to be filed, as not constituting elements of value ; and that, therefore, such exclusion in *sec. 5649, supra,* is constitutional ?

In order to determine whether that part of *sec. 5649, supra*, which excludes from the schedules to be filed by the railroad companies the " embankments, tunnels, cuts, ties, trestles and bridges," is in conflict with any, or all of these provisions of the constitution, it is well to inquire into the nature and extent of the rights of railroad corporations in the soil used by them for their roads, and whether these rights are property within the meaning of the constitution, and taxable as such.

From the authorities it must be conceded that the " embankments, tunnels, cuts, ties, trestles and bridges" of railroad companies are real estate, and that they are not within the description of property exempt by *sec. 5, art. 16, of the Constitution.*

See, *secs. 5-6-7, art. 16, Const.; Coke, Lett., 19; 2 Vesey, Jr., 651; 4 ib., 542; 3 Price, 357; 10 Vesey, Jr., 42; 1 Barn. & Cr., 694; 9 Mett., Mass., 199; 2 Bland Chy., 99, 145; 2 R. I., 15; ib., 459; 18 Wall., 206; Eastern Rep., vol. 3, no. 5, p. 569.*

None of this property can be exempted from taxation by the legislature. *Sec. 5, art. 16, Const.; Const. Cal., sec. 13, art. 11; 34 Cal., 432; 43 Cal., 331; 38 Iowa, 633; 39 ib., 56; 47 ib., 196; 19 W. Va., 408; 5 Ohio St., 589; 11 ib., 541; 25 Ill., 557; 30 ib., 146; 8 J. Baxt., 530; 25 Ark., 289.* In none of the states mentioned above, is there any provision answering to *sec. 6, art. 16*, of our constitution.

*Third*—Appellant contends that the board of railroad commissioners is created by the statute, and its powers are prescribed and limited by the statute, and that, consequently it exceeded its powers in considering the value of " embankments, tunnels, cuts, ties, trestles and bridges," when valuing the " railroad track ;" that there is no manner provided by law for *assessing* " embankments, tunnels, cuts, ties, trestles and bridges," and, consequently, the

same cannot be *taxed.* In other words, this involves two propositions; which are, *first,* that the revenue act upon the subject of assessing and taxing railroad corporations must be taken as it was passed by the legislature, as an entirety, and is either all good or all bad; if all good, then the "embankments," etc , are not subject to taxation, and if all bad, then the legislature has failed to direct the manner in which the value of this species of property shall be ascertained; but, in either case, the board of railroad commissioners acted *ultra vires;* and, *second,* that the act merely regulates the *assessment* of railroad property, and that it is within the power and is the duty of the legislature to prescribe the manner or mode in which all property shall be assessed for taxation, and that, unless the mode so prescribed is pursued, no valid levy of taxes can be made.

The exemption being void and separable, it should be stricken out, and the act stand as if that provision had not been inserted. *34 Cal., 432; Cooley Const. Lim., 177, et seq.; 37 Ark., 356; 24 Ark., 161.*

As to the second proposition it is specious and untenable. *43 Cal., 331; 12 Barb., 225, N. Y.*

Where the railroad companies or corporations do not own the soil itself upon which their roads are located, still, as we have seen, they own such rights in the soil as are considered real estate; and this real estate, consisting in part of the "embankments, tunnels, cuts, ties, trestles and bridges," and not coming within any of the species of property exempted by the constitution from taxation, must be taxed according to its value.

Smith, J. This suit was brought by appellant to enjoin the collection of the taxes for the year 1885, assessed upon its "railroad track" in the several counties through which

said railway runs, upon the alleged ground that the board of railroad commissioners exceeded its powers in requiring the railway company to include in the schedules required to be filed by it, a list and valuation of the "embankments, tunnels, cuts, ties, trestles and bridges," and in considering said "embankments," etc., as elements of value in making the assessment of said "railroad track."

Appellees answered, admitting the assessment of said "railroad track" in accordance with the provisions of the revenue act of March 31, 1883, but denying that said board of railroad commissioners assessed or valued the "embankments, tunnels, cuts, ties, trestles and bridges," upon appellants right of way, separately and apart from the other real estate constituting said "railroad track;" or according to the cost of constructing the same; but alleging that the value of said "embankments," etc., was considered in connection with the other property, constituting said "railroad track;" admitted that said board disregarded that part of said revenue act which attempts to exempt from assessment and taxation the "embankments, tunnels, cuts, ties, trestles and bridges" of appellants, as being unconstitutional, and assessed said "railroad track" at its true value, and that such assessment was not excessive.

Appellees also demurred to appellant's complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

The cause was heard by the chancellor upon the complaint, answer and demurrer, and exhibits; the relief was denied, the bill dismissed, and the railway appealed.

No question is presented as to the power of the legislature to provide for the manner of ascertaining the value of this species of property; but it is conceded that full power is granted by the constitution for the establishment of the board of railroad commissioners, and for the separate

21–46

classification of railroad property for purposes of taxation. And it was, manifestly, the intention of the legislature that this board should have the sole power of assessing all railroad property in this state which is situated on the right of way.

The taxes upon the rolling stock of the railway company are not in litigation. That was assessed as personal property by the same board of railroad commissioners, under *secs. 5651* and *5653* of *Mansfield's Digest*, and the taxes have been paid.

Sec. 5647 provides that "the governor, secretary of state and auditor of public accounts shall be, and are hereby, constituted a board of railroad commissioners for .this state; and on the first Monday in April in each year, shall proceed to ascertain the value of all property, including railroad track, rolling stock, water and wood stations, passenger and freight depots; offices, furniture and such other property, real and personal, as is owned by each of the railroads or railways of each company or corporation having existence under the laws of this state, or incorporated in whole or in part therein, and running through or in this state in the manner hereinafter prescribed."

Sec. 5649: "They (the railroad companies) shall, in the month of March, in the year 1883, and at the same time every second year thereafter, when required, make out and file with the secretary of state a statement or schedule showing the main and all side-tracks, switches and turn-outs in each county in which the railroad may be located, and in each city and town in said county through or into which the road may run. They shall also state the value of all improvements, stations and structures, including the railroad track, located on the right of way, *but such schedule shall not include nor value embankments, tunnels, cuts, ties, trestles or bridges.*"

Sec. 5650: "Such railroad, as described and scheduled in the last preceding section, shall be held to be real estate for the purpose of taxation, and denominated 'railroad track,' and shall be so listed and valued, and shall be described in the assessment thereof as the railroad track of the —— railroad company, in the county, city or town, and such description shall be considered as embracing all the property required to be assessed by section 5649, and when advertised and sold for taxes no other description shall be necessary."

Sec. 5652: "The board of railroad commissioners shall meet on the first Monday in April, in the year eighteen hundred and eighty-three, and at the same time in each year thereafter, at the office of the secretary of state for the state of Arkansas, and, after being duly sworn to fearlessly, impartially and honestly discharge their duties, shall proceed to examine the lists or schedules of the description and value of the railroad tracks of the railroad companies filed with the secretary of state in accordance with the requirements of this act, and if said schedules are made out in accordance with the provisions of this act, and, in the opinion of the board, the valuation of said railroad tracks is fair and reasonable, said board shall appraise the same, and it shall be the duty of the secretary of state to certify to the assessor of each county in which such railroads are located so much of said list, as values such railroad tracks as are located in such county, and in any city or town of such county, and such assessor shall list and assess the same as real estate, by the description, as hereinbefore specified."

These are the principal provisions of the revenue act, so far as they affect this case. The whole controversy has arisen upon the meaning, effect and constitutionality of the italicised clause of section 5649. The railway com-

pany made a return of the length of its main line and side-tracks, and of the value thereof, and of the structures on its right of way, not taking into account embankments, tunnels, cuts, cross-ties, trestles or bridges. The board determined that all railroad property in the state should be assessed at its true value, like any other property, without any deduction on account of embankments, etc. The several railroad companies were notified and requested to render statements of the true value of their respective lines, without regard to the restrictions contained in section 5649, and were accorded a full hearing. Acting upon the advice of the attorney general of the state, that said clause was unconstitutional, and that they were not bound by it, they proceeded to assess the appellant's railway at a sum nearly double what it had returned.

It is not complained that this valuation was excessive, but the contention is:

*First*—That the board has no power to construe the constitutionality of any part of the act, but must take it and act under it as it reads, without regard to the question of any part of it being in violation of the constitution.

*Second*—That it is in the power of the legislature, in providing for the manner of valuing railroad property, to determine what elements shall be taken into consideration as constituting such value; and that it was competent for that body to exclude the "embankments, tunnels, cuts, ties, trestles and bridges" from the schedules to be filed, as not constituting elements of value; and that, therefore, such exclusion in *section 5649, supra*, is constitutional.

*Third*—That the board of railroad commissioners is created and its powers prescribed and limited by the statute, and that, consequently, it exceeded its powers in considering the value of "embankments, tunnels, cuts, ties, trestles

and bridges " when valuing the "railroad track" of appellant; that there is no manner provided by law for assessing "embankments, tunnels, cuts, ties, trestles and bridges," and, consequently, the same cannot be taxed.

The meaning of the clause in question is not self-evident. If the legislature intended to enact that the railroad embankments, tunnels, etc., should not be separately assessed, then the board has not attempted to do this. For the pleadings show that the constituents of value which enter into railroad property have not been assessed in separate items or parcels, but *in solido*. The line, considered as a thoroughfare and means of transportation, has been valued as a unit. If, on the other hand, the legislature meant to relieve any portion of the property belonging to railroad corporations from the duty of contributing to the rightful demands of the state, in the exercise of its powers of tax ation, they have undertaken to do something which is quite beyond their power.

Now, officers of the executive department are not bound to execute a legislative act which, in their judgment, is repugnant to the constitution. Their primary allegiance is due to the constitution; and if there be a conflict between the two, the constitution is the higher law, or, rather, the supposed law is not a law at all, being null and void. They do, indeed, incur peril by deciding for themselves, in advance of the courts, the unconstitutionality of an enactment. But they are also liable to be punished in damages if they carry into effect an act which violates the fundamental law. *Rison v. Farr, 24 Ark., 161,* affords an illustration. The constitution of 1864 prescribed the qualifications of voters. The legislature attempted to add to the qualifications by directing that the voter, before depositing his ballot, should make oath that he had not, since the 18th of April, 1864, voluntarily borne arms against the

1. Unconstitutional statutes to be disregarded by executive officers.

2. They decide at their peril.

United States, nor aided the confederate authorities. Farr possessed the constitutional qualifications, but refused to take this oath. The judges of election would not allow him to vote; and he recovered judgment against them, which was affirmed by this court.

Judge Cooley, in his work on Constitutional Limitations, at page 74, says : "Whoever derives power from the constitution to perform any public function is disloyal to that instrument, and grossly derelict in duty, if he does that which he is not reasonably satisfied the constitution permits. Whether the power be legislative, executive or judicial, there is manifest disregard of constitutional and moral obligation by one who, having taken an oath to observe that instrument, takes part in an action which he cannot say he believes to be no violation of its provisions."

Article 16, of the constitution of 1874, contains the following provisions:

Sec. 5. "All property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the general assembly shall direct, making the same equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value."

Sec. 6. "All laws exempting property from taxation, other than is provided in this constitution, shall be void."

Sec. 7. "The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state may be a party."

The tunnels, tracks, sub-structures, superstructures, viaducts and masonry of a railroad are property—the private property of the stockholders. There must have been an interest in the land to justify the erection or affixing of

these structures in the first instance, and the exclusive possession and use of them afterwards by the company. They are, in fact, part and parcel of the railroad. The company controls the improvements, and it is only by lease or other arrangement that the trains of other companies are permitted to run over it. Now, it can make no difference, in respect to taxation, whether the rails are laid upon the surface of the road, or placed on pillars, or carried through a covered way or tunnel. *Smith v. Mayor, 68 N. Y., 552; People ex rel. v. Commissioners of Taxes, 82 ib., 459; Same v. Same, 3 Eastern Reporter, 569 (N. Y. Ct. of Appeals, Jan., 1886).*

All railroads are declared by the constitution (*art. 17, sec. 1*) to be public highways; but the public are entitled to use them only upon the condition of paying tolls.

The theory of our constitution is that the common burden shall be borne by common contributions. All property is to be taxed according to its value. "All" does not mean all the legislature may designate, or all except such as the legislature may exempt. If this were so the whole burden of taxation might be thrown upon land, or upon any one species of property. It means all private property, of every possible description, or all property other than that belonging to the state, or the general government. The legislature cannot discriminate between different classes of property in the imposition of taxes. The only discretion with which it is invested, is in the ascertainment of values, so as to make the same equal and uniform throughout the state. *People v. McCreary, 34 Cal., 432; Same v. Eddy, 43 ib., 331; C. & O. Ry. Co. v. Miller, 19 W. Va., 408; Zanesville v. Richards, 5 Ohio St., 589; Baker v. Cincinnati, 11 ib., 541; Ellis v. L. & N. R. Co., 8 Jere Baxter, 530; Fletcher v. Oliver, 25 Ark., 289.*

3. TAXES: Legislature no power to discriminate.

But it is further contended that, as the whole authority of the board in the premises is derived from the revenue act, and as the act makes no provision for the assessment of " embankments, tunnels, cuts, ties, trestles and bridges,"‑ therefore the same cannot be taxed. The argument, if limited to the separate assessment and taxation of these things, is good. But, if it is meant that these necessary parts of every railroad are not to be considered in the estimation of the value of the whole line, the argument assumes two propositions: *First*—That the revenue act upon the subject of assessing and taxing railroad corporations, must be taken as it was passed by the legislature, as an entirety, and is either all good or all bad; if all good, then the " embankments," etc., are not subject to taxation, because expressly excluded, and, if all bad, then the legislature has failed to direct the manner in which the value of this species of property shall be ascertained; but, in either case, the board of railroad commissioners acted *ultra vires*. *Second*—that the act merely regulates the *assessment* of railroad property, and that it is within the power and is the duty of the legislature to prescribe the manner or mode in which all property shall be assessed for taxation, and that, unless the mode so prescribed is pursued, no valid levy of taxes can be made.

It does not follow that the attempted exemption of certain parts of railroad property avoids the whole revenue act. The exemption, being void, must be stricken from the act and the act read as if that provision had not been inserted. *People v. McCreary, supra.*

4. Statute unconstitutional in part.

When a statute is divisible and a portion of it is repugnant to the constitution, so much of the statute is to be upheld as does not conflict with the constitution and the enactment sustained by rejecting the objectionable part. WATKINS, C. J., in *Washington v. State, 13 Ark., 752.*

Judge Cooley, in his *Constitutional Limitations*, at *page 177, et seq.*, lays down the rule in such cases to be as follows : " Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other."

This rule was applied by this court, in the case of *The State v. Marsh, 37 Ark., 356*, to a section of the act of 1879, regulating the sale of liquors in this state. This court, through its late learned Chief Justice ENGLISH, declared that it would not undertake to say that the legislature would have passed the act without the section being just as it was enacted; but that, as passed, the section was in violation of the commerce clause of the constitution of the United States, and, for that reason, void; and the section

was reformed by the court, by striking out the obnoxious words, and as thus reformed, it was held to be valid and is now the law of this state.

5. TAXES: Statute: Sec. 5649 of Mans. Dig. unconstitutional.    The clause of section 5649, under consideration, may be stricken out without detriment to the remainder of the act and the consistency of its parts. It is useless and unnecessary in any view; and construed as providing for an exemption, it is ineffectual and mischievous.

Of the proposition that the act is a mere regulation for the assessment of railroad property, it is sufficient to say that this clause, if enforced, would prevent the taxation of such property according to its value. An assessment is a prerequisite to a valid levy of taxes. And the legislature cannot, under the guise of regulating the duties of assessors, exempt property from taxation. *People v. Eddy, supra.*

If a law should be passed directing county assessors, in assessing farm lands, not to include nor value ditches, drains, wells, fences or other improvements, it would be their duty to go forward and assess the land at its real value, disregarding the directions.

The decree is affirmed.

SEPARATE OPINION BY COCKRILL, C. J.

There can be no doubt that, under the operation of our constitution, the legislature can, when they see fit, classify railroad property as a separate class for purposes of taxation. This is sometimes thought necessary from the inherent nature of the property. A former revenue act of this state adopted, as a basis suitable for ascertaining a value for taxation, the receipts of the railroad from its business. But the act now in force passes the tangible property of railroads into the general mass of taxable property, making the division of real and personal estate

that is made for individuals, and subjecting it to its quota, fairly due, to be levied as a property tax on the common mass. The only difference made between that and other property of the class to which it is assigned by legislative action, is the machinery provided for its assessment or valuation. One is fixed by the local assessors in the several counties, the other by a state board. The plan, however, provides but one measure of valuation, and that measure, as the constitution provides, is the *value*, the true value of the property taxed. When once assigned by the legislature to the class of property subject to the general property tax, there is no escape from its equal share of the common burden to be borne by that class. The constitutional command of equality and uniformity then presses the burden upon the whole mass alike, and prevents the possibility of legislative action oppressing one part for the benefit of the rest, or favoring one at the expense of the others. When a general system is provided for taxing a railroad track as real estate, it is no more competent for the legislature to say that it shall be returned for taxation at one-half its real value, than to provide for assessing it at double its value. Nor, after the adoption of such a system, would it be competent for the legislature arbitrarily to subtract from the mass of real estate, any particular part of it, whether it belonged to the agricultural or railroad class, and, under the plea of classification, exempt it from taxation. Classification may be resorted to for the purpose of separate taxation, but not for the purpose of permitting an escape from the burden of taxation. Under the searching provisions of our organic law no property can escape taxation, and no subterfuge can be successfully resorted to by the legislature to effect exemption therefrom.

It is proper to presume that the lawmakers who passed the act in question knew the limitation of their power,

and intended to keep within the bounds pointed out to them by the constitution. If the proviso which excludes from the return for assessment to be made by the companies the value of embankments, tunnels, cuts, etc., was intended as an exemption from taxation of a, part of the real estate, it would be inoperative, as we have seen. But it does not appear to be necessary to so construe the act, and deference to a co-ordinate department should impel us to put that construction upon it which is consistent with the duty that was incumbent upon them to perform in its passage. I think the court should regard the proviso merely as a means devised for ascertaining the true value of the road. The cuts, tunnels, tressels and embankments are all necessary parts of the road, but none of them in itself adds any separate value to it. They merely overcome the inequalities of the soil, and I think it was the intention of the legislature in requiring the company to give in for assessment the main and all side-tracks, switches and turnouts, to give them in at their true value as a railroad, without adding to or subtracting from its actual cash or market value as such, anything by reason of the accidental fact that it embraced costly cuts or embankments. The valuation of the "tracks," as defined in the statute, which is inserted in the schedules furnished by the companies, is not conclusive of the value of the road to the commissioners. It is only a means of obtaining information. The duty is devolved upon them of exercising a sound practical judgment in ascertaining the value of the roads. The eminence of their official positions is a guaranty that the duty will be impartially performed. The company does not now complain of the performance of the duty, except in this: They appear to have been prevented by the board from deducting from the true value of the road as such, the cost or " value," as the statute has

it, of their cuts, embankments, trestles, etc. The members of the board would have been derelict in their duty if they had permitted an assessment of the property at less than its real value, just as they would have exceeded their authority if they had undertaken to augment the true value of the property as a railroad by reason of the fact that it happened to contain in its make-up, trestles, cuts and embankments.

As the assessment is regular the decree should be affirmed.