BUCKSTAFF BATH HOUSE COMPANY *v.* McKINLEY, COMMR.

4-5435                                    127 S. W. 2d 802

Opinion delivered April 10, 1939.

92

*E. R. Parham,* for appellant.
*Walter L. Pope,* for appellee.

GRIFFIN SMITH, C. J.   Appellant denies it is subject to the provisions of Act No. 155, approved February 26, 1937,[1] and refused to pay the tax alleged by appellees to be due for the 1937 calendar year.

Injunctive relief was sought to prevent E. I. McKinley, as Commissioner of the Department of Labor, and W. A. Rooksberry, as Director of the Division of Unemployment Compensation of the [Arkansas] Department of Labor, from levying and collecting assessments provided for by the act.   Appellant insists that, although it is an Arkansas corporation, its place of business is within the United States Government Reservation at Hot Springs, in Garland County.   It admits that during the period in question it had in its employ fifteen persons engaged in performing services in the operation of its bathhouse ". . . for which plaintiff became liable as an employer and paid the aggregate sum of $9,029.80."   During the same period fifteen attendants ". . . performed services at [plaintiff's] bathhouse, who received the aggregate sum of $9,445.55 in the manner and according to the terms of the rules and regulations promulgated by the United States Department of the Interior, . . . and that during said period nine people performed services in the massage department, receiving in the aggregate the sum of $4,885.44, in accordance with rules and regulations of the Department of the Interior."

Appellant's first position is that because of its situation within the boundaries of a government reservation, jurisdictional supervision, regulation, control, etc., have not been surrendered to the State of Arkansas to an extent permitting assessment of the unemployment tax, notwithstanding that consent of the United States was given the State to tax, as personal property, all structures and other personal property in private ownership within the Reservation.

Appellant, at its own expense, erected a bathhouse and equipped it according to specifications approved

---

[1] Pope's Digest, §§ 8549 to 8569.

by the Secretary of the Interior. It operates the business under a lease executed in 1931.

Secondly, appellant says that it is an instrumentality of the United States Government, engaged in the distribution and conservation of medicinal waters of the Reservation to the extent authorized by acts of Congress relating thereto and rules of the Department of the Interior, and that as such instrumentality it is exempt from the contributions specified in act 155 of the Arkansas General Assembly; that ". . . compensation for services performed by attendants and massagers does not constitute employment or wages within the meaning of said Act."

It is further urged that collection of the tax or contribution would be violative of Art. 4, § 3, of the Constitution of the United States.

Department of the Interior regulations for bathhouses, made a part of contracts under which waters of the Reservation are allocated, show a retention by the Department of certain elements of control.[2]

---

[2] Regulations of the Department of the Interior provide that bathhouses shall be allowed such number of tubs as the Secretary of the Interior may deem necessary for the public service. Charges shall be fixed by the Secretary. Tickets shall be sold at specified rates and only to persons intending to use them for bathing. Tickets are redeemable according to a scale fixed by the Department of the Interior. No complimentary tickets may be issued, nor any sale of bath equipment on the premises. No person shall be allowed to bathe without a ticket registered in the office of the superintendent [of the Reservation]. The rate of charges for massages and tickets are fixed at varying amounts, providing for that portion of the ticket [or interest therein] which shall belong to the attendant or masseur. All attendants, masseurs, etc., are required to undergo physical examinations. Drumming and soliciting are prohibited. Regulations as to the use and sale of bath mitts, towels, sheets, blankets, etc., are included. Approval of the superintendent required for the employment of any person in the bathhouses of Hot Springs National Park. Bath attendants prohibited from performing their work on the premises without having passed a written examination, a physical examination, and without paying their privilege fee to the department. They may charge for their services not exceeding 20 cents for a single bath, and $4 for a course of baths. Superintendent authorized to collect a fee of $6 for examination of bath attendants. Masseurs similarly regulated. Bathhouse required to furnish the superintendent with daily

We must first determine whether collection of the tax laid by Act 155 is a legitimate exercise of the State's governmental functions.

Having found that "Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the State," and that "Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action," it was the General Assembly's considered judgment that ". . . the public good, and the general welfare of the citizens of this state require the enactment of [the Unemployment Compensation Law] under the police power of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

An excise tax is levied on wages paid to employees, to be paid by the employer at the rate of 1.8% for 1937, and 2.7% after December 31, 1937. Future rates are to be based on benefit experience.

The National Social Security Act[3], Title IX, levies a tax on every employer (with stated exceptions) of eight or more. Payments covering the 1936 calendar year were 1%, due January 1, 1937. For 1937 the rate was 2%; and 3% thereafter. The term "employment" excludes agricultural labor, domestic services in private homes, and other small classes.

Allowable credits are provided by § 1102. Against the tax so imposed, the amount of contributions (with respect to employment during the taxable year paid by such taxpayer into any unemployment fund under a state law having the approval of the National Social Security Board) not to exceed 90%, may be deducted by the taxpayer.

Effect of these provisions is this: The Arkansas rate for 1937, being 1.8%, and the Federal rate being 2%, the taxpayer in reporting to the Federal Government

and monthly reports of activities. No stock in an incorporated bath house may be transferred without consent of the director of the National Park Service.

[3] Act of August 14, 1935, c. 531, 49 Stat. 620, 42 U. S. C. A., c. 7 (Supp.), § 301.

took credit for the payment made to the State, and remitted two tenths of one per cent to Washington. For 1938 credit was taken for 2.7%, and three tenths of one per cent was sent to the Federal treasury.

All remittances on pay rolls involving less than eight persons, made directly to the Unemployment Compensation Division of the Arkansas Department of Labor, go into the treasury at Washington and earn 3% interest. Remittances on pay rolls of eight or more covering the tax assessed by Act 155, although made to the State Unemployment Division, are likewise sent to the National Treasury and become a trust fund for the benefit of employees within the classification of eight or more. If there be no state unemployment compensation law of a character meeting approval of the National Social Security Board, the full amount levied under Title IX is collected by the Federal Bureau of Internal Revenue and is deposited generally in the U. S. Treasury without credit to the state wherein the collection is made.

Appellant admits it was liable to the United States for unemployment compensation tax levied under Title IX of the Social Security Act,[4] and that such tax has been paid.

The three questions for determination are:

(1) Did the Federal Government authorize the State to assess and collect taxes of the character herein discussed?

(2) Is appellant a governmental instrumentality or agency, and therefore excused?

(3) Are appellant's employees independent contractors?

By Act of March 3, 1891,[5] the Congress of the United States extended the Federal Government's consent ". . . for the taxation, under the authority of the laws of the state of Arkansas applicable to the equal taxation of personal property in that state, as personal property

---

[4] U. S. Code Annotated, Title 42—The Public Health and Welfare.

[5] ........ U. S. C. Annotated, p. 365.

[of] all structures and other property in private owner-ship on the Hot Springs Reservation.''

*Ex Parte Gaines,*[6] decided more than a year after Congress had extended the authority just referred to, declared the law to be: ''When the Government parts with its title, or any interest therein, the property or interest which the Government parts with becomes subject to taxation. When it makes a lease to an individual of any interest or privilege in its lands within the Reservation, the interest of the lessee, whatever it may be, may be taxed, subject however to all the rights and interests which the United States retains in the property . . . The interest of the lessee in the land is not the property of the United States, and it is not a means employed by the Government to obtain a governmental end. The power to tax that interest does not involve, therefore, the power to destroy or disturb any interest of the United States Government.''[7]

The tax laid by Act 155 is not a tax on personal property; nor is it, in *any* sense, a property tax. But the Congress seemingly intended (and this construction is strengthened by the Gaines Case) to permit the State to exercise its sovereignty within the Reservation with respect to the conduct of business, commerce, and the professions, subject only to the interest retained by the Government and the right to enforce restrictions under the federal laws and under rules promulgated by the Interior Department.

Lands were leased; and individuals, corporations, partnerships, etc., were permitted to erect buildings and to engage in activities for profit and amusement. Healing properties of the medicinal waters were recognized, and the use of such waters was circumscribed in order that opportunity might be afforded the public to enjoy the benefits.

But the Government, *per se,* did not engage in the business of operating appellant's bathhouse. On the

[6] 56 Ark. 227; 19 S. W. 602. Opinion dated May 21, 1892.

[7] *The Little Rock & Fort Smith Ry.* v. *R. W. Worthen, Collector, et al.,* 46 Ark. 312. See third headnote. This case is cited in Ex Parte Gaines.

contrary, it leased the site and fixed the fees to be charged by operators. The extent to which such regulations were carried is shown in the second footnote to this opinion.

Constitutionality of the National Social Security Act was assailed in *Stewart Machine Company* v. *Davis*,[8] The controversy reached the Supreme Court of the United States, where in an opinion written by Mr. Justice Cardozo[9] it was said: "The tax, which is described in the statute as an excise, is laid with uniformity throughout the United States as a duty, an impost, or an excise upon the relation of employment."

*Carmichael* v. *Southern Coal Company* [10] is another case in point. The opinion, written by Mr. Justice Stone, contains the following statements:

"This court has long and consistently recognized that the public purposes of a state, for which it may raise funds for taxation, embrace expenditures for its general welfare . . . The existence of local conditions which, because of their nature and extent, are of concern to the public as a whole, the modes of advancing the public interest by correcting them or avoiding their consequences, are peculiarly within the knowledge of the legislature, and to it, and not to the courts, is committed the duty and responsibility of making choice of

[8] 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293. Petitioner was an Alabama corporation. It paid its tax of $46.14 and filed a refund claim with the Commissioner of Internal Revenue, and sued to recover, asserting a conflict between the statute and the Constitution of the United States. Upon demurrer the district court gave judgment for the defendant, dismissing the complaint. The circuit court of appeals for the fifth circuit affirmed. 89 F. 2d 207. Certiorari was granted.

[9] Mr. Justice CARDOZO, in the Steward Machine Company-Davis Case, stated that the decision of the court of appeals was in accord with judgments of the Supreme Judicial Court of Massachusetts, the Supreme Court of California, and the Supreme Court of Alabama. It was in conflict with a judgment of the circuit court of appeals for the first circuit, from which one judge dissented. (See page 573, 301 U. S.). 57 S. Ct. 883, 81 L. Ed. 1245, 109 A. L. R. 1219.

[10] 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327. [The Arkansas Unemployment Compensation Law is said to be almost identical with the Alabama law.]

the possible methods . . . When public evils ensue from individual misfortunes or needs, the legislature may strike at the evil at its source. If the purpose is legitimate because public, it will not be defeated because the execution of it involves payments to individuals.''

Although constitutionality of the Arkansas statute is not directly questioned in the appeal before us, this is the first case reaching this court in which payment of the tax is involved. Necessarily if we hold that appellant must pay the State's demand, we have upheld the validity of Act 155. For this reason the decisions quoted from have been cited.

The Legislature had the right to require that employers make contributions in the manner provided by Act 155. The National Social Security Act denominates the contribution ''an excise tax levied on employers.'' That the required payment is referred to in our Act 155 as a ''contribution'' is of no significance. It is a compulsory contribution, and therefore a tax.

In its original sense an excise was something cut off from the price paid on a sale of goods, as a contribution to the support of the government. In its broader meaning it now seems to include every form of taxation which is not a burden laid directly upon persons or property—every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.[11]

In *State* v. *Handlin* [12] it was said [with respect to the inheritance Act of May 17, 1907]: ''We . . . hold that the tax provided by this Act upon the privilege of succeeding to inheritances and estates was well within the power of the legislature to impose, being included within its express powers to 'tax privileges in such manner as may be deemed proper'.''

[11] Ballentine's Law Dictionary, pp. 460-461. "An interesting review of the authorities discussing the meaning of the word 'excise' will be found in Mr. Justice BREWER's opinion in *Patton* v. *Brady*, 184 U. S. 608, 46 L. Ed. 713, 22 Supp. Ct. Rep. 493.

[12] 100 Ark. 175, 139 S. W. 1112.

Quoting from Judge Cooley,[13] Chief Justice McCulloch said: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes."

Individuals, firms, and corporations engaged in business are privileged to do so because of the protection extended by government. Enforcement of contracts generally is a matter of constant judicial address. The State's welfare is best served when those of its citizens who must labor are able to find employment at profitable wages and in healthful surroundings. The contribution exacted by Act 155 becomes cumulative for use when the worker finds himself industrially adrift. His misfortune is not one affecting the individual alone. It extends to the entire community. If unemployment cannot be avoided, at least its tragic consequences can be ameliorated. Such is the purpose of the statute in question.

In the instant case, if it be urged that the tax is laid against the privilege of paying employees, or upon the right of an employer to engage labor (and therefore unrelated to personal property as appellant insists and beyond the grant of authority expressed in the Act of 1891, and not to be reasonably implied from the nature of the grant), the answer is that the Federal Government has enacted a similar tax; and appellant, having more than eight employees, comes within the classification from which unemployment compensation is exacted. We are asked to say that the Congress has not conferred upon Arkansas the right to impose the excise in question, while at the same time the National Social Security Act imposes a similar tax on employers in each of the forty-eight states. Conceding, as we must, that authority of the State to collect the tax does not come from the Social

---

[13] Ex Parte Byles, 93 Ark. 612, 126 S. W. 94; 37 L. R. A., N. S., 774, error dismissed, 1912, 225 U. S. 717, 32 S. Ct. 836, 56 L. Ed. 1270.

Security Act of Congress, yet the power conferred by Act of 1891 to tax personal property impliedly carried with it the right to tax the use of such property to the same extent and in manner similar to property not within the Reservation.

It is next insisted by appellant that it possesses all of the characteristics necessary to classification as a governmental agency or instrumentality, and, as such, is exempt from the tax.

The rule announced in Cooley on Taxation [14] is that "A corporation cannot escape state taxation merely because it was created by the federal government, nor because it was subsidized by it, nor because it was employed by the federal government, wholly or in part, unless it is really an agency or instrumentality for the exercise of the constitutional powers of the United States."

Imposition of the tax here does not in any sense interfere with the Government's business. On the contrary, the expressed social policies of the government are sustained and promoted.

Finally, appellant urges that its employees are independent contractors. In its complaint it alleged they were employees. There was a declaration that "The employees, bath attendants and massage operators . . . are residents of the state of Arkansas, and . . . unemployment compensation for the year 1937 has been paid to the United States for their salaries, wages, and com-

---

[14] Fourth Edition, v. 2, p. 1300. See *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242; *Fidelity & Deposit Company* v. *Pennsylvania*, 240 U. S. 319, 36 S. Ct. 298, 60 L. Ed. 664; *James* v. *Dravo Contracting Company*, 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155, 114 A. L. R. 318; *Union Pacific Railroad Company* v. *Peniston*, 18 Wall. 5, 21 L. Ed. 787; *Trinity Farm Construction Company* v. *Grosjean*, 291 U. S. 466, 54 S. Ct. 469-70, 78 L. Ed. 918.

Mr. Justice STONE of the Supreme Court of the United States has excellently reviewed the subject of immunity of Federal agencies and instrumentalities from state taxation. See *Mark Graves et als., Commissioners* v. *People of the State of New York, etc.*, Law Edition Advance Opinions, v. 83, p. 577. The opinion sustains the views we have expressed in the instant case.

missions.'' If it now be urged that language of the complaint was inadvertent, still we think the record establishes the relationship of master and servant, and the point must be overruled. The means and methods by which the work was done were subject to directions of appellant.

Action of the chancellor in sustaining the demurrer to appellant's complaint was correct, and the decree dismissing the complaint is affirmed.