HICKENBOTTOM v. McCAIN, COMMISSIONER OF LABOR.

4-7383                         181 S. W. 2d 226

Opinion delivered June 19, 1944.

486

*Charles M. Haft*, for appellant.

*Luke Arnett*, for appellee.

SMITH, J. At the 1941 session of the General Assembly, Act No. 391 was passed entitled: "An Act to Create the Employment Security Division in the Department of Labor; . . ." Acts of 1941, p. 1098, *et seq*. This legislation superseded and by § 21 thereof expressly repealed two prior Acts on the same subject, these being Act 155 of the Acts of 1937 and Act 200 of the Acts of 1939 amending Act 155. This litigation challenges the constitutionality of Act 391 as being violative of both the state and federal constitutions. The grounds upon which Act 391 is attacked would have been equally applicable to the question of the validity of the prior legislation. This Act 391 extends from page 1089 to page 1154, both inclusive, of the Acts of 1941, but the disposition of this appeal does not require an analysis of its provisions,

and we shall refer only to those provisions of the Act which it is urged render it unconstitutional.

As is well known, and as was said in former opinions by this court, construing the legislation which Act 391 supersedes, the Acts were passed to conform to the federal legislation on the same subject, which imposed certain taxes upon employers of labor with certain exceptions not important here to consider. This federal legislation imposed a tax which was collectible throughout the nation whether the states thereof enacted legislation supplementary and complementary to it or not, but permitted those states which did pass such legislation to retain a fixed portion of the taxes, all of which would otherwise have been payable to the federal government. *Buckstaff Bath House Co.* v. *McKinley, Commr.,* 198 Ark. 91, 127 S. W. 2d 802. It is said that, thus induced, all the states have passed legislation on the subject, and it is said also that the constitutionality of such legislation has been uniformly upheld by both the state and federal courts, at least against such attacks as are made upon Act 391.

It is here urged that the Act violates the equal protection and due process clauses of the 14th Amendment to the Federal Constitution, but this contention is definitely and adversely disposed of by the opinion of the Supreme Court of the United States in the case of *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, and also upon the appeal to that court from the decision of this court in the Buckstaff case, *supra,* to which case further reference will later be made, where it was said: ''We agree with the Supreme Court of Arkansas that the state had jurisdiction to impose the tax in question.'' *Buckstaff Bath House Co.* v. *McKinley, Commr.,* 308 U. S. 358, 60 S. Ct. 279, 84 L. Ed. 322.

In our opinion in the Buckstaff case, *supra,* it was said that ''we must first determine whether collection of the taxes levied by Act 155 (of the Acts of 1937) is a legitimate exercise of the state's governmental functions.'' After citing and reviewing the decisions of the

Supreme Court of the United States in the cases of *Stewart Machine Company* v. *Davis,* 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293, and the Carmichael case, *supra,* we said: "Although constitutionality of the Arkansas statute is not directly questioned in the appeal before us, this is the first case reaching this court in which payment of the tax is involved. Necessarily if we hold that appellant must pay the state's demand, we have upheld the validity of Act 155. For this reason the decisions quoted from have been cited." It was held that the tax must be paid, thereby upholding the constitutionality of the Act.

The opinion in the Carmichael case, *supra,* involved the constitutionality of a statute of the state of Alabama, which was there upheld, and in the footnote to the opinion of this court in the Buckstaff case, *supra,* there appears the statement that, "the Arkansas Unemployment Compensation Law is said to be almost identical with the Alabama law."

The case of *McKinley, Commr. of Labor,* v. *R. L. Payne & Son Lbr. Co.,* 200 Ark. 1114, 143 S. W. 2d 38, arose under and involved the construction of certain portions of amendatory Act No. 200, of the Acts of 1939, and it was there said: ". . . But the constitutionality of this particular Act was definitely settled in the case of *Buckstaff Bathhouse Co.* v. *McKinley, Commr., supra.*"

It is argued that neither of these opinions by this court is conclusive of the constitutionality of Act 391 of the Acts of 1941, for the reason that the objections to the constitutionality of Act 391 here raised were not raised or considered in either of the prior cases arising under Act 155 of 1937 and Act 200 of the Acts of 1939.

This is true, and we, therefore, consider the objections to Act 391 of the Acts of 1941. But before doing so we will dispose of a motion made in the court below and insisted upon here. This appeal is from the decree of the court below dismissing the case for lack of jurisdiction, and an objection to the jurisdiction sustained by the court below was and is that this is a suit against the state and is, therefore, in contravention of § 20, art. V, of the

Constitution, which provides that "the state of Arkansas shall never be made defendant in any of her courts." The purpose of this suit is to restrain the officers provided for by Act 391 from discharging the duties imposed upon them by the Act in the collection of the taxes which it imposes, and it is, therefore, insisted that the suit is in effect one against the state, although the state is not a nominal party.

Among the other and latest cases cited in support of this contention is that of *Page* v. *McKinley,* 196 Ark. 331, 118 S. W. 2d 235, which, in turn, cites our leading cases on the subject. That was the case in which it was sought to enjoin the State Treasurer from paying warrants issued by the Auditor of the State in favor of certain county assessors, who had agreed that a per cent. of their official fees, payable to the state, should be paid to the plaintiffs who sought to enjoin the State Treasurer from paying these warrants to the assessors, with whom they had contracted. We held that the action was in effect an equitable garnishment against the State Treasurer, relating to funds belonging to the state, and was, therefore, a suit against the state. We there quoted and approved a statement from 59 C. J. 307, reading as follows: "Accordingly it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent . . ."

This opinion in the Page case, *supra,* cites a number of our opinions on this subject and among others the case of *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742, 134 Am. St. Rep. 88, which may be termed our leading case upon the subject. This Pitcock case overruled the previous decision of this court in the case of *McConnell* v.

*Arkansas Brick Company,* 70 Ark. 568, 69 S. W. 559, which related to the same contract, one for the hire of state convicts. It was held in the McConnell case that the suit was not one against the state, while in the Pitcock case it was held that the suit was against the state. After reviewing a number of cases, including decisions by the Supreme Court of the United States, it was said of these cases that: "The only distinction found in these cases is that where the suit is against an officer to prevent him from doing an unlawful act to the injury of the complaining party, such as the taking or trespass upon the property belonging to the latter, the former cannot shield himself behind the fact that he is an officer of the state; and also where the officer refuses to perform a purely ministerial act, the doing of which is imposed upon him by statute. In either of such cases a suit against such an officer is not a suit against the state."

The instant suit is predicated upon the theory and allegation that certain officers, under the purported authority of an Act which is unconstitutional and, therefore, void, are about to take the plaintiff's property by imposing a tax, which when imposed becomes a lien upon it. But if the relief prayed is granted no obligation is imposed upon the state. It is, therefore, not a suit against the state. The opinion in *McCain, Commr. of Labor,* v. *Crossett Lumber Co.,* 206 Ark. 51, 174 S. W. 2d 114, cites a number of cases to the same effect.

It is argued that inasmuch as the Act creates a Department of Labor which is placed under the supervision of an officer designated as the Commissioner of Labor, who is charged with the enforcement of the provisions of the Act, it is violative of the following provisions of our Constitution, to-wit: Section 1, art. IV; § 1, art. V; § 1, art. VI; art. VII, and § 9 of art. XIX.

We will consider these objections to Act 391 collectively, but before doing so we may say here, as was said in the case of *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9, that: "Before proceeding to a discussion of the issues raised by this appeal, we deem it proper to premise our remarks by two fundamental rules of construc-

tion announced and adhered to throughout the history of this court. First, that the Constitution is not a grant of enumerated powers to the Legislature, not an enabling, but a restraining act (*Straub* v. *Gordon,* 27 Ark. 625), and that the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the state of Arkansas. (Citing cases) . . . Second, that an Act of the Legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the Act and the Constitution; and further, that all doubt on the question must be resolved in favor of the Act. (Citing cases)." These propositions have been announced in all of the many cases in which we have been called to pass upon the constitutionality of legislative action.

Section 1, art. IV, of the Constitution provides that the powers of the government shall be divided into three distinct departments, legislative, executive and judicial. Section 1, art. V, vests the legislative powers of the state in a General Assembly, consisting of a Senate and House of Representatives. Section 1, art. VI, provides that the executive department of the state shall consist of a Governor, Secretary of State, Treasurer, Auditor and Attorney General, and authorized the establishment of the office of Commissioner of State Lands, a power which has been exercised. By the sixth amendment to the Constitution the office of Lieutenant Governor was created. Article VII of the Constitution vests the judicial power in certain courts there named.

In our opinion, Act 391 does not offend against any of these provisions. It does create an administrative agency charged with the duty of enforcing its provisions, but it does nothing more, and we do not find in the provisions of the Constitution above referred to or elsewhere in the Constitution any inhibition against the employment of such an agency for such a purpose. To do so would greatly and , we think, unduly restrict the power inhering in the General Assembly to create agencies of this character. The General Assembly, in the exercise

of its legislative power, has found it necessary to create a number of such agencies, to the functioning of which many of the same constitutional objections have been unsuccessfully interposed, nor do we think the legislation is violative of § 9 of art. XIX of the Constitution.

An early and frequently cited case is that of *Lucas v. Futrall*, 84 Ark. 540, 106 S. W. 667. That case involved the constitutionality of an Act of the General Assembly creating the office of superintendent of the School for the Blind whose tenure of office, compensation and duties were fixed and defined by the Act creating the office. It was said that the Constitution had made it the duty of the General Assembly to provide by law for the support and education of the deaf and dumb and the blind, and for the treatment of the insane, and that the Legislature, therefore, had the power necessary to effectuate those purposes. Dealing specifically with the blind, it was there said: "Therefore, if the Legislature saw fit to create a public office under this authority, it would not be violating § 9 of art. XIX of the Constitution, which forbids the General Assembly to create any permanent state offices not provided for in the Constitution, as the mandate to provide for the education of the blind necessarily carried with it the power to create what offices the Legislature might deem necessary to carry out the power conferred."

The police power which resides in the state as a sovereign exists without express constitutional grant, and may be used in any manner not prohibited.

In the exercise of this power the General Assembly, at its 1913 session, passed Act 96, creating the State Board of Health and Vital Statistics, which Act was attacked upon the ground that it delegated legislative as well as police powers to the board and created permanent state offices. This Act authorized the board to make rules and regulations pursuant to which its functions should be performed. None of the objections to the Act was sustained, although two members of the court were of the opinion that the Act was violative of § 9 of art.

XIX of the Constitution in that it created permanent state offices; but the majority held otherwise.

For all practical purposes, this question has been considered as settled by the opinion in the case of *Greer* v. *Merchants' & Mechanics' Bank*, 114 Ark. 212, 169 S. W. 802, which construed and upheld Act 113 of the Acts of 1913, pages 462, *et seq.*, creating the State Banking Department. Section 1 of this Act provided that for and during the period of 12 years there is created a department to be known as the State Banking Department. It was insisted that notwithstanding this limitation of 12 years, the Act was violative of § 9, art. XIX, of the Constitution. It was said in the opinion that after diligent search by the learned counsel in that case, they had failed to find a provision similar to § 9 of art. XIX in the Constitution of any other state, and the court was, therefore, without the aid of any decision by any other court. We quote somewhat extensively from that opinion, as we think its reasoning is applicable and controlling here. It was there said:

"(1) The framers of the Constitution obviously did not intend to place an absolute prohibition against the creation by the Legislature of offices not expressly provided for. The prohibition only reaches to the creation of permanent state offices. That being true, the question arises, who is to be the judge of the question of permanence of an office, or the necessity for its temporary existence. The answer to this question, we think, results in the solution of the difficulty presented in this case. Observing the general rules of interpretation in determining whether a given constitutional provision is mandatory, or whether it is merely directory and cautionary to the Legislature, we are of the opinion that this provision falls within the latter class. The command is to the Legislature itself, and it necessarily involves the power to determine the necessity for creating a temporary office, and to determine whether the work to be done is of a temporary or permanent nature."

It was there further said: "We attach little, if any, importance to the provision of the statute limiting the

time to twelve years, for we think that the Legislature has the power to determine whether an office to be created is permanent or temporary, whether expressly declared in the Act or not. If it is created as a temporary office, we must assume that the Legislature found it to be such. The creation of the office implies a determination that it is temporary, and not permanent.

"There can be no irrepealable laws which depend for existence entirely upon the legislative will, and any office created by the Legislature is temporary in the sense that it is subject to the legislative will, and may be abolished at any time.

"Those who take such temporary offices as may be created by the Legislature do so with notice of the insecure tenure and the acceptance of the office creates no contract with the state. *Humphry* v. *Sadler,* 40 Ark. 100."

The opinion in this Greer case stated that the 1913 General Assembly, which passed the Act creating the State Banking Department, had also created several other new departments, and that power has been exercised by subsequent sessions of the General Assembly until today we have 44 governmental agencies and departments. These were created as the state grew and its interests became more varied and the state's welfare, in the opinion of the General Assembly, required the legislation. Separate appropriations are made for these agencies and departments, the best known and most important of which are: the Insurance Department, the Oil and Gas Commission, the State Purchasing Agent, the Agricultural and Industrial Commission, the State Health Commission, Banking Department, Department of Labor, the Auditorial Department, the State Board of Education, State Forestry Commission, State Geologist, Public Utilities Commission, Bond Refunding Board, Basic Science Board, Arkansas Corporation Commission, Fish and Game Commission, Flood Control Commission, State Planning Board, Soil Commission, Department of Revenues, and State Police Department. Others are of less importance except to persons affected.

It would be revolutionary to declare the Acts creating these departments and agencies unconstitutional, and would not be done if any doubt existed as to their constitutionality.

This legislation does not, as learned counsel for appellant insists, infringe upon the provisions of the Constitution dividing our government into three departments, nor has it created permanent state offices in violation of the Constitution. It was said in the opinion in the Buckstaff case, *supra,* that this legislation was enacted pursuant to the police power of the state, and so with the other legislation above referred to. Having this power, the General Assembly has the right to create such offices and agencies as are necessary to its exercise. *Lucas* v. *Futrall, supra; Little River Board of Education* v. *Ashdown Special School District,* 156 Ark. 549, 247 S. W. 70; *Helena Water Co.* v. *Helena,* 140 Ark. 597, 216 S. W. 26; *Gentry* v. *Harrison,* 194 Ark. 916, 110 S. W. 2d 497; *Arkansas State Highway Commission* v. *Dodge,* 181 Ark. 539, 26 S. W. 2d 879.

Inasmuch as we think Act 391 is constitutional, the decree from which is this appeal must be affirmed, and it is so ordered.

HOLT, J., nonparticipating.